IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      No. 1:23-cr-00946-WJ

MARIO FIGUEROA-CAMARILLO,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

**THIS MATTER** comes before the Court following a hearing on Defendant's Motion[1] to Suppress (**Doc. 28**). Having reviewed the pleadings of the parties, heard the oral arguments of counsel, and considered the applicable law, the Court hereby **DENIES** the motion.

### BACKGROUND[2]

On December 6, 2022, New Mexico State Police ("NMSP") Officer Jerry Santana—assigned to the Auto Theft Suppression Unit—was on proactive patrol in Albuquerque searching for stolen vehicles (**Doc. 37 at 2**). His primary method of locating stolen vehicles is to search a license plate or vehicle identification number ("VIN") through the Law Enforcement Automated Data System ("LEADS"). *Id.* This LEADS system is linked to NCIC. ***Ibid.***

---

[1] In addition to Defendant's opening suppression filing, the Court necessarily considered the United States' Response (**Doc. 37**) as well as Defendant's Reply (**Doc. 44**).

[2] The Court's factual recitation in the "Background" section is based on the witness testimony and exhibit introduced at the Suppression Hearing. The evidence elicited at the hearing was wholly consistent with the factual narrative set forth in the pleadings. Given the lack of an official transcript at this time, the Court proceeds with citations to the filings (when relevant) or summaries of the testimony.

Around 12:32pm on December 6th, Officer Santana observed a 2004 Ford F-350 pickup truck in the parking lot of the "Sun apartment complex" on the corner of Bell Avenue SE and Mesilla Street SE (**Doc. 37 at 2**). At the hearing, Officer Santana testified that this area of Southeast Albuquerque has a big problem with stolen vehicles. He also explained the way the truck was parked—*i.e.*, backed in all the way up to a wall—was consistent with concealing a stolen vehicle (as parking in this manner hides the license plate). Naturally, Officer Santana investigated.

The truck was unoccupied, so Officer Santana approached the vehicle (**Doc. 37 at 3**). He testified that he located both the license plate and the VIN in plain view; and then entered that information into LEADS/NCIC system. The LEADS return showed the following:

```
Received: 2022-12-06 12:32:46
    MKE: Q-QV
    ORI: NMNCIC000
2022-12-06 12:32:46

MKE/STOLEN VEHICLE
ORI/NM0320300 LIC/YCC3131 LIS/MN LIY/NX LIT/TK
VIN/1FTSW31P64ED45014 VYR/2004
VMA/FORD VMO/F35 VST/PK VCO/BLU/GLD DOT/20221116
OCA/LPD22002891
MIS/BLUE OVER GOLD W/ NEW RUST REPAIR ON DRIVER SIDE QUARTER PANEL / CHROME PUSH
MIS/ GUARD/ REPORTING PARTY
OPT/OUT
NIC/V384532471 DTE/20221116 1106 EST DLU/20221116 1106 EST
ORI IS LOS LUNAS PD 505 865-9130
IMMED CONFIRM RECORD WITH ORI
```

**Doc. 37 at 3** (modified) (including redaction of the reporting party's information); **Gov. Ex. 1** (same). The LEADS return confirmed this truck was stolen. Because of this, Officer Santana placed a GPS tracker onto the truck—so that law enforcement could locate the truck whenever it moved (in order to facilitate an arrest of the driver, at a later time). **Doc. 37 at 3**.

That evening, the truck started moving. *Id.* According to testimony, the truck's movement triggered a motion alert. Based on this alert, Officer Santana (and other law enforcement officers) followed the truck. They tailed the truck for approximately an hour, *id.*, but explained the truck

was never "in a safe location" to conduct a cordoned-off traffic stop. *Id.* Instead, Officer Santana eventually deployed a tire deflation device—*i.e.*, "spike strips." *Id.*; **Doc. 28-1 at 5**.

The tires deflated. The truck stopped. And the officers arrested the Defendant (**Doc. 37 at 3**). Law enforcement identified Mr. Mario Figueroa-Camarillo by his Mexican passport and then conducted a search incident to arrest (*Id.* **at 4**). During this search, law enforcement discovered a "fully loaded 9mm magazine in the pocket of his hoodie sweatshirt" and $1,786 in cash. *Id.*

Because the Defendant was arrested, and because the vehicle was stolen, NMSP radioed to dispatch that a tow was necessary. *See* **Doc. 28-2 at 1** (requesting dispatch "SEND A 46"). Prior to towing, however, an inventory search needed to be conducted. It was during this inventory[3] that law enforcement discovered methamphetamine, fentanyl, a Taurus 9mm pistol, and more ammunition (**Doc. 37 at 4**).

Mr. Figueroa-Camarillo now contends his "warrantless arrest . . . did not comply with the Fourth Amendment, and therefore, any physical evidence or statements subsequently obtained must be suppressed as the fruit of his illegal seizure and arrest." **Doc. 28 at 1**. He further asserts that "the uncorroborated information that NMSP Agents obtained through the NCIC/LEADS query" is insufficient to establish probable cause (**Doc. 44 at 3–4**). And finally, he argues that the

---

[3] Defense counsel's argument at the suppression hearing focused on the alleged impropriety of this inventory search. So too did Defendant's Reply brief (**Doc. 44**). The Court finds this line of argument to be a red herring—and quickly disposes of it below. *See infra* ¶ III. At the hearing, law enforcement characterized the search as an inventory; so, the Court will call it an inventory. But even if it were an investigative search, there was probable cause. First, law enforcement could have legally searched the truck for evidence related to the New Mexico state law violations. Alternatively, because Defendant was an illegal alien in possession of 9mm handgun ammunition, law enforcement had probable cause to search the vehicle on these grounds as well.
   The characterization does not matter, though—because "a person present in a stolen automobile at the time of a search may [not] object to the lawfulness of the search of the automobile." *Byrd v. United States*, 584 U.S. 395, 409 (2018) (brackets in original) (paraphrasing *Rakas v. Illinois*, 439 U.S. 128, 141 n.9 (1978)).

inventory search was actually an illegal investigatory search because Agent Romero[4] stated he "searched the vehicle for basic contraband." *Id.* **at 3**. Each of these arguments miss the mark.

## FOURTH AMENDMENT SEARCHES AND SEIZURES

The Fourth Amendment guarantees the "right of the people to be secure in *their* persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV (emphasis added). Put another way, Fourth Amendment rights are "personal" and "must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

Whether a search implicates a particular Defendant's Fourth Amendment rights is commonly called "standing." *See United States v. Gordon*, 168 F.3d 1222, 1226 n.2 (10th Cir. 1999); *see also United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009). Therefore, in order to bring a challenge under the Fourth Amendment, a person must have a "reasonable expectation of privacy." *United States v. Hatfield*, 333 F.3d 1189, 1195 (10th Cir. 2003).

Relevant here is the probable cause standard. Probable cause is "incapable of precise definition," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), but requires a "probability or substantial chance of criminal activity." *United States v. Cruz*, 977 F.3d 998, 1005 (10th Cir. 2020). With respect to warrantless arrests, a warrantless arrest is reasonable "if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001)). Once probable cause is established, a warrantless arrest is lawful. *United States v. Edwards*, 632 F.3d 633, 639 (10th Cir. 2001).

---

[4] At the suppression hearing, defense counsel called Agent Elizardo Romero as a witness. Agent Romero was questioned, in particular, about his pretrial interview (from when this case was in state court). Defense counsel lodged the audio with the Court simultaneously with the filing of the Reply brief. *See* **Doc. 44 (Def. Ex. E); Doc. 45** (notice of lodging). Consistent with the facts outlined in the Reply Brief (**Doc. 44 at 2–3**), Agent Romero testified that he searched the truck for contraband—explaining he relied on his understanding of the Supreme Court's decision in *Byrd*.

# DISCUSSION

In his motion, Defendant opines that the "NCIC/LEADS information relied upon . . . does not connect the truck's stolen status with Mr. Figueroa-Camarillo." **Doc. 44 at 5**. According to defense counsel, law enforcement did not have probable cause to believe the driver of a known stolen truck was committing a crime. *Id.* **at 6**. The Court disagrees.

## I. There Was Probable Cause to Arrest Mr. Figueroa-Camarillo

It is uncontested that the police arrested, *i.e.*, seized, Mr. Figueroa-Camarillo without a warrant. The question, then, is: "Did NMSP have probable cause for the arrest?"

The Court concludes the answer is undoubtedly yes.

As of noon on December 6, 2022, NMSP officers knew the Ford F-350 pickup truck was stolen. But the LEADS[5] return alone did not prove this—rather, it was Officer Santana's verification of the license plate and VIN that gave rise to this LEADS return. Importantly, courts have held that "the license plate and vehicle identification numbers" are sufficient to confirm if an automobile is stolen. *Collins v. Virginia*, 584 U.S. 586, 589–90 (2018). Accordingly, the information within all the law enforcement officers' collective[6] knowledge clearly furnished grounds for a reasonable belief that the driver (later identified as Mr. Figueroa-Camarillo) had committed—and was in the act of committing—the offense of Receiving or Transferring a Stolen Motor Vehicle, in violation of NMSA 1978, § 30-16D-4(A). **Doc. 37 at 4**.

---

[5] The Tenth Circuit has cited favorably to LEADS or NCIC returns as providing probable cause. *See United States v. Hines*, 564 F.2d 925, 927 (10th Cir. 1977) (noting that information from NCIC "has been routinely accepted in establishing probable cause for a valid arrest"); *United States v. Shareef*, 100 F.3d 1491, 1505–06 (10th Cir. 1996) (finding officers' reliance on NCIC was reasonable); *Miller v. City of Nichols Hill Police Dep't*, 42 F. App'x 212, 214–16 (10th Cir. 2002) (unpublished) (noting that the officer "reasonably believed" a crime was committed based on "the dispatcher's report from NCIC that the vehicle was reported stolen"); *Maresca v. Bernalillo County*, 804 F.3d 1301, 1304–05 (10th Cir. 2015) (explaining that if "the stolen car in the NCIC report" matches the vehicle being driven after officer verification, then that is sufficient to establish a vehicle is stolen).

[6] Under the collective knowledge doctrine, the reasonable suspicion or probable cause of one officer can be imputed to another officer. *See United States v. Pickel*, 863 F.3d 1240, 1249 (10th Cir. 2017).

There can be no disagreement that a warrantless arrest is permitted if "an officer has probable cause to believe a person committed . . . [a] crime in his presence." *Virginia v. Moore*, 553 U.S. 164, 171 (2008). And, as explained above, NMSP officers had "reasonably trustworthy information" that satisfies the probable cause standard. *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022).

Relying on a creative view of the Fourth Amendment, defense counsel asserts suppression is necessary because NMSP did not have probable cause that Mr. Figueroa-Camarillo "knew" the truck was stolen (**Doc. 28 at 6**). The Court is not convinced.

First, the statute criminalizes possessing a vehicle that the person "knows or has reason to believe has been stolen or unlawfully taken." NMSA 1978, § 30-16-D-4. Under state court jurisprudence, this element means the Defendant must "kn[o]w or ha[ve] reason to know" that the vehicle was stolen. *State v. Brown*, 2010-NMCA-079, ¶ 28, 148 N.M. 888, 242 P.3d 455 (N.M. Ct. App. 2010). And, furthermore, under New Mexico Supreme Court precedent, "circumstantial evidence . . . may be sufficient to prove what a [person] *should have known*." *Est. of Gutierrez ex rel. Jaramillo v. Meteor Monument, L.L.C.*, 2012-NMSC-004, ¶ 16, 247 P.3d 97 (N.M. 2012) (emphasis added); *see also State v. Merhege*, 2017-NMSC-016, ¶ 10, 394 F.3d 955 (N.M. 2017) ("The knowledge element may also be established through a sufficient quantity of direct or circumstantial evidence."). All this to say, proof of Defendant's *mens rea* could reasonably be inferred by his exclusive control of the stolen vehicle. It is uncontradicted that the vehicle was not his—so, presumably he knew (or should have known) it was stolen or unlawfully taken. Finally, common sense dictates defense counsel's proffered version of proof cannot be required; for otherwise, law enforcement would rarely have probable cause to arrest a person. *See Holt v. United States*, 404 F.2d 914, 919 (10th Cir. 1968) ("It is not necessary that the [arresting] officer possess

6

knowledge of facts sufficient to establish guilt, all that is required is knowledge that would furnish a prudent man with reasonable grounds for believing a violation had occurred.").

No matter if defense counsel's argument is rooted in state law or federal law, one's mental state can always be inferred. Quite obviously, law enforcement is not required to be omniscient mind-readers before they effectuate an arrest. *See United States v. Christy*, 916 F.3d 814, 849 (10th Cir. 2019) (finding "the jury could infer intent"); *United States v. Brooks*, 67 F.4th 1244, 1251 (10th Cir. 2023) (explaining specific intent can be inferred); *State v. Rudolfo*, 2008-NMSC-036, ¶ 31, 144 N.M. 305, 187 P.3d 170 (N.M. 2008) (noting specific intent can be inferred).

There is no support in the record, or the law, to justify suppression.

**II. The Search Incident to Arrest was Lawful**

During the search incident to arrest, Officer Santana located a "fully loaded 9mm magazine in the pocket of [Mr. Figueroa-Camarillo's] hoodie sweatshirt" and "$1,786" in cash. **Doc. 37 at 3**. This search was proper. Once a person has been legally arrested, "the probable cause to support the arrest supports the search incident to arrest." *United States v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019) (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)). Because officers had probable cause to arrest Mr. Figueroa-Camarillo, *see supra* ¶ I, they also had the authority to conduct "a valid search incident to arrest." *United States v. Saavedra*, 549 F. App'x 739, 745 (10th Cir. 2013) (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009)). Essentially, arresting Defendant permitted "police to conduct a search incident to arrest." *United States v. Gaines*, 918 F.3d 793, 800 (10th Cir. 2019) (*Chimel v. California*, 395 U.S. 752, 762–62 (1969)).

Defendant's argument on this point[7] is meritless and deserves no further discussion.

---

[7] Originally, law enforcement had probable cause to arrest Mr. Figueroa-Camarillo for possessing a stolen vehicle under New Mexico law. Ostensibly, they could have searched the vehicle for tools or evidence associated with this crime. But upon finding the ammunition—in conjunction with Defendant's presentation of his Mexican passport (and,

**III. Mr. Figueroa-Camarillo Does Not Have Fourth Amendment Standing[8]**

Although Mr. Figueroa-Camarillo can certainly challenge his warrantless arrest, the law does not permit him to challenge the subsequent search of the stolen truck. A person "may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated." *United States v. Rubio-Rivera*, 917 F.2d 1271, 1274 (10th Cir. 1990) (citation omitted). Here, Mr. Figueroa-Camarillo's rights were not violated by the search of the truck. It does not matter at all if the search was an inventory or an investigative search for contraband.

In moving to suppress the evidence, Mr. Figueroa-Camarillo bore the initial burden of showing his Fourth Amendment rights were implicated. *See United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020); *United States v. Carhee*, 27 F.3d 1493, 1496 & n.1 (10th Cir. 1994). Defendant did not meet his burden in the pleadings or at the hearing. In other words, Defendant did not—and cannot—have a reasonable expectation of privacy in a stolen truck. Necessarily, then, he lacks Fourth Amendment standing to challenge the attachment of the GPS tracker or the evidence obtained during the search. *See Byrd*, 584 U.S. at 409 ("No matter the degree of possession and control, the car thief would not have a reasonable expectation of privacy in a stolen car").

---

therefore, his identification as an illegal alien)—law enforcement had probable cause to search the vehicle for more evidence of the crime of possession of a firearm by an alien. *See* 18 U.S.C. § 922(g)(5).

[8] In his Reply (**Doc. 44**), Mr. Figueroa-Camarillo included—for the first time—argument that "officers lacked probable cause to search the truck. In addition to not being raised in the original pleading (**Doc. 28**), Defendant does not have standing to raise this argument.

The fact that Agent Romero searched "for contraband," is of no consequence. At the hearing, Defendant introduced no evidence showing that he had gained lawful possession of the truck from the registered owner. Because Mr. Figueroa-Camarillo failed to present any evidence that he was in lawful possession of the truck, the Court concludes he did not have a reasonable expectation of privacy in the truck. *See, e.g., United States v. Arango*, 912 F.2d 441, 445–46 (10th Cir. 1990); *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008) (explaining "a possessory or property interest in the vehicle searched," is required to establish standing),

As Senior Tenth Circuit Court of Appeals Judge Paul Kelly succinctly stated, "[b]ecause the poisonous tree was planted in someone else's orchard, Mr. [Figueroa-Camarillo] lacks standing to challenge its fruits." *United States v. Davis*, 750 F.3d 1186, 1190 (10th Cir. 2014). The same rings true here.

## CONCLUSION

Upon consideration of the parties' motions, evidence presented, and arguments of counsel, and in light of the applicable law, the Court finds law enforcement had probable cause to arrest Mr. Figueroa-Camarillo. Any arguments for suppression of evidence found during his warrantless arrest or the subsequent searches are without adequate footing in the law. Finally, Defendant cannot avail himself of a cognizable Fourth Amendment interest in the stolen truck.

Accordingly, the Motion to Suppress (**Doc. 28**) is **DENIED**.

**IT IS SO ORDERED.**

/s/
_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE